Ebeeman, J.,
delivered the opinion of the court.
This bill and amended bill were were filed by a portion of the heirs of Charles Pugsley deceased,— grand children, and some of them perhaps great grand children.
The complainants seek to enforce their right to property left by said Chas. Pugsley, against Louisa A. Pugsley, one of his daughters.
The facts necessary to be stated are as follows:— On the 26th of April, 1830, Chas. Pugsley made his will. He died some time in the year 1831. His widow, who was nominated as his executrix, proved the will and entered upon the discharge of her duties.
By the second clause of this will, Ihe testator provided: — “To my beloved wife, Eliza Pugsley, I give and bequeath all the remainder of my estate, of whatsoever kind, real and personal, to be used and enjoyed by her during her natural life, hereby authorizing her to sell or dispose of the same in any way she may deem necessary for the convenience and support of herself and our two daughters, Caroline E. Pugsley and Louisa A. Pugsley; and if, at the death of my said wife any part or portion of my property or effects shall remain, the same to be equally divided between our said daughters, or their representatives.”
On first of November, 1830, the testator purchased a house and lot in the city of Nashville, part of lot *691 No. 86, from John Dwyer, situated on Summer street, for the sum of $8,000, expressed on the face of the deed to have been paid in cash, and on the same day he executed a mortgage to John B. Carter, of Davidson, on this lot, to secure the payment of three notes made by him amounting to about $4,500.
On the back of this mortgage, is the following release, or relinquishment of the right of Carter under the mortgage:—
“Nashville, July 28th, 1831.
I hereby acknowledge that I have received payment of the within specified notes, and hereby relinquish my mortgage to the within described property.
Attest: Jno. B. Carter.
J. W. Bacon,
Jno. P. Erwin.”
This release, it will be seen, was given in the lifetime of the testator.
It is true that there is some question in the argument as to whether the year of the date is legible, so as to be certainly fixed at 1831. But upon an examination of the original paper, which, by consent of counsel, is made part of the record, as well as from the circumstances appearing in the record, we are satisfied this is the true date.
It is clear, as is conceded in the argument, that as the law stood in 1832, at the death of the testator, this real estate did not pass by his will, having been acquired after its execution.
*692 Our statute changing this rule was passed many years after this.
On the 28th of April, 1831, Chas. Pugsley conveyed this house and' lot to Robert Woods and Daniel Graham, in trust for himself and wife Eliza Pugs-ley during their natural lives, and upon the death of both said Charles and Eliza, then the trustees or their survivors, or the executor or administrator of such survivor, was to convey the premises, in fee, in common, to such children of the said Charles and Eliza as should be living, or to the descendants of any child or children, such descendants taking their parents’ proportion; and the same as to any rents and profits that might be in the hands of said trustees. In default of any child or descendants, or such surviving,, then the property was to be conveyed as said Charles Pugsley might direct in his. will.
There can be no question but that this property is controlled by this conveyance, and that the rights of the children or descendants are under the same.
It is insisted, however, that the $4,500 in the mortgage to Cartel’, was borrowed to pay for the lot to Dwyer, and this is probable trué.
It is further insisted that Mrs. Pugsley paid this money, and took up the notes secured, out of money belonging to her as her separate estate.
We find no satisfactory evidence of this claim.
It is true, the notes were found among her papers after her death, in 1863; but as she was the executrix of her husband, this was the place for them, and no inference can be drawn from this alone.
*693 In her will, dated in 1857, Eliza Pugsley, the widow, recites the fact that the house was paid for out of money settled upon herself separately by marriage contract in England, (the parties being English); ■but this can be no evidence of the fact as against the claimants under the deed.
There is no other evidence that she ever had a separate estate, nor is there the slightest evidence that any money of her own was paid for this property.
The Chancellor so held, and we affirm his decree upon this point.
The testator, however, left considerable other estate, both real and personal; and the next question is, what is the proper construction as to this property, of the will we have' cited ? Does the wife take an absolute estate in it, by virtue of the power of disposition therein contained, or. is it so qualified and limited that the remainder may take effect?
This question is very definitely settled by the de•cisions of this court; at any rate, the principle .seems well agreed on, though the application of it may present some difficulty.'
The general rule has beén always recognized since the leading case of Smith v. Bell, Mar. & Yer., 302j where it is thus stated: If the first taker has power during his life to dispose of the property absolutely, the devise over is void, and the first taker has the fee. And in this there no difference between personalty and lands.
In this case, the testator’s language was, after giving his wife all his personal estate after payment of *694 debts and legacies: — “which personal estate I give and bequeath unto my said wife Elizabeth, to and for her use and benefit and disposal, absolutely.”
The case of Bean v. Myers, 1 Col., 226, is a similar one.
This having become a rule of property, is to be adhered to; but as it defeats the actual intention of the testator, it ought not to be extended farther than has already been done.
It is one of the remnants of technical law, contravening the spirit of our jurisprudence on the subject of wills, which is that every man be permitted to dispose of his acquisitions as he may think best, so that he violate no law nor rule of public policy.
On the other hand, there are cases where a qualification of the above rule has been applied, which may now be held to have become as well fixed in our jurisprudence as the rule itself. It may be stated substantially, as laid down . by Judge Totten in the case of Deaderick v. Armour, 10 Hum., 596, that where the power of disposition to the first taker is qualified or restricted, he has only a life estate.
The power in this case was, by and with the consent of the trustee, to sell, use and dispose of, any or all of the aforesaid property, or her interest therein, as she might think fit.
The limitation or check on the exercise of the-power, by requiring the assent of the trustee, was held to take the case out of the general rule.
The case of Pillow v. Bye, 1 Swan, 190, is almost identical with the one now before us. In that case, *695 the language of the testatrix was, after giving the property to her daughters, — “My object is to make a provision for her, and not to postpone her interest to those of my remote descendants, and if for any cause it becomes necessary for her ease and comfort, to use any portion of the principal of the property and money herein set- apart for her, it is my wish that it should be done. It is my wish that she should have the full use and enjoyment of the property and money during her natural life, etc.”; and then the testator went on to give the property over, upon the condition of her leaving children, as follows: — “It is my will that 'the property and money, or the part remaining after providing for her in the manner herein declared, shall go to her children or their descendants according to the statute of descent and distribution.”
It was held that this'language qualified the power so as to take the case out of the rule, and that the corpus of the property could be resorted to only to supply any deficiency in the fund to meet the provision made, and to the extent only of the necessity.
The language of the will before us is, “to be used and enjoyed by her during her natural life, hereby authorising her to sell or dispose of the same in any way she may deem necessary for the convenience and support of herself and our two daughters, etc.”
Here, applying the principle of the foregoing case, the power is to be exercised only when deemed necessary for the convenience and support of herself and the two children.
*696 We think that these cases, and especially the one last cited, are conclusive of this question, sustaining the validity of the gift over in remainder.
Such was the view of the learned Chancellor, and we affirm his decree.